# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| EDMUND ZAGORSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-01205 |
| ) | |
| BILL HASLAM, et al., ) | JUDGE TRAUGER |
| ) | |
| Defendants ) | |

## MEMORANDUM AND ORDER

On October 26, 2018, the court granted the plaintiff authorization to proceed in this case *in forma pauperis*, dismissed *sua sponte* two of his three causes of action, and ordered the defendants to respond to the remaining count. (Doc. No. 8.) The matter is before the court on the plaintiff's Motion to Alter or Amend Order Dismissing Counts I and II of the Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 9.)

### I. MOTION TO RECONSIDER

The plaintiff asks the court to reconsider its dismissal of Counts I and II of his most recent Complaint. (Doc. No. 9.) District courts reviewing motions to reconsider interlocutory rulings "[a]t a minimum, . . . require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available." *Al-Sadoon v. FISI\*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

With regard to Count I, the plaintiff acknowledges that Tennessee's collateral estoppel doctrine prevents the relitigation of an "issue" that is identical to an issue decided in an earlier proceeding in which the issue was actually raised, litigated, and decided on the merits. (*Id.* at 2–3

(quoting *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009).) He argues, however, that his current claim is a Fourteenth Amendment coercion claim, rather than an Eighth Amendment claim, and that the Tennessee courts' ruling on his previous Eighth Amendment claim, therefore, does not raise the bar of collateral estoppel. (*Id.* at 2–7.) The plaintiff's position overlooks the distinction between collateral estoppel, the doctrine the court has applied in this case, and res judicata, as explained by the Tennessee Supreme Court:

> [T]he doctrines of res judicata and collateral estoppel are very similar. Res judicata bars litigation if a second suit involves the same parties and **the same cause of action** that was determined in the first action. Collateral estoppel prevents identical parties from relitigating in a different action **issues determined** in a previous suit. *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). In this case, collateral estoppel bars the relitigation of issues determined in the previous chancery suit between these identical parties.

*Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (emphasis added). The fact that the plaintiff has incorporated the alleged Eighth Amendment violation associated with Tennessee's three-drug lethal injection protocol into a new cause of action, therefore, does not avoid the application of collateral estoppel to the **issue** of whether that protocol constitutes a cruel and unusual punishment.

The plaintiff argues now that the threat of even constitutional action can amount to unconstitutional coercion. (Doc. No. 9 at 6–7.) But his Complaint makes clear that the issue of the constitutionality of Tennessee's lethal injection protocol is a central lynchpin to Count I. He expressly alleges in Count I that he has been forced "to choose between two cruel and unusual punishments," that "both [are] constitutionally unacceptable forms of execution," and that "[b]oth methods rise to the level of torture and a barbaric punishment that cannot be permitted under the Eighth Amendment." (Doc. No. 1 at 29.) Accordingly, to prevail on Count I, as he has alleged it, the plaintiff would have to prove the very opposite of what the Tennessee Supreme

Court has already ruled.[1] That is precisely what is prohibited by the doctrine of collateral estoppel.

Even if the plaintiff's Complaint alleged only that Tennessee's lethal injection protocol entails some risk of pain, he could not establish an entitlement to relief on Count I without disproving the Tennessee Supreme Court's conclusions. He argues that Count I is "animated by the unconstitutional conditions doctrine." (Doc. No. 9 at 4.) Pursuant to the doctrine of unconstitutional conditions, "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983)). But the plaintiff has not identified any benefit that the state has withheld in this case. The plaintiff has been sentenced to death, which the Supreme Court maintains is a constitutional form of punishment. *Baze v. Rees*, 553 U.S. 35, 47 (2008). Moreover, "the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Id.* Accordingly, sparing the plaintiff a potentially painful execution is not a benefit the defendants have the power to bestow. The only possible "benefit" to which the plaintiff might point is some other, significantly less painful method of execution, which is precisely what the Tennessee Supreme Court found the plaintiff and his fellow inmates failed to establish in *Abdur'Rahman*.

---

[1] Specifically, the Tennessee Supreme Court held that "the Plaintiffs failed to establish that Tennessee's current three-drug lethal injection protocol constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution or article I, section 16 of the Tennessee Constitution." *Abdur'Rahman v. Parker*, No. M201801385SCRDOCV, 2018 WL 4858002, at *15 (Tenn. Oct. 8, 2018), *cert. denied sub nom. Zagorski v. Parker*, No. 18-6238, 2018 WL 4900813 (U.S. Oct. 11, 2018). It also expressly rejected the plaintiff's allegation that Tennessee's three-drug protocol amounted to torture: "Tennessee's three-drug lethal injection protocol does not rise to the level of punishments that are categorically forbidden by the Eighth Amendment." *Id.* at *8. It found that Tennessee's protocol is not comparable to disallowed punishments in which "'terror, pain, or disgrace were sometimes superadded' to the sentence," and that it does not involve "the deliberate infliction of pain for the sake of pain." *Id.*

Finally, to the extent that the "benefit" in question is the right to elect electrocution, the plaintiff has received that "benefit." The waiver—arising from that election—of his right to challenge the constitutionality of electrocution is not imposed by the defendants, but by the United States Supreme Court. *See Stewart v. LaGrand*, 526 U.S. 115, 119 (1999). As a matter of law, logic, and commonsense, the fact that the plaintiff considers lethal injection to be more onerous than electrocution does not circumvent that waiver, because no inmate would ever intentionally choose a death he expected to entail *more* pain and suffering.[2] For the same reasons, the plaintiff cannot establish any "coercion" to circumvent that waiver as set forth in Count II.

The plaintiff has not established any clear error in the court's previous decision, and does not rely on any new facts or law that change the court's opinion about the merits of his claims. The plaintiff's motion to reconsider is, therefore, **DENIED**.

## II. MOTION FOR INJUNCTIVE RELIEF

The plaintiff also seeks a temporary restraining order or preliminary injunction preventing the defendants from executing him pursuant to either the default lethal injection protocol or electrocution, and from executing him in any manner without the presence of two attorney witnesses with immediate access to a telephone and the ability to communicate. (Doc. No. 9 at 9.)

---

[2] Indeed, as the court has already observed, the plaintiff expressly alleged facts in another recent lawsuit that totally contradict some of his current arguments: "In that suit, the plaintiff repeatedly asserted that "it is his sincere preference to die by the electric chair' and affirmatively alleged that he 'trusts that the prison staff can competently flip the switch to turn on the electrical current,' that the chair has been tested this year and is 'operational,' that '[p]rison personnel have been trained in how to conduct an execution using this electric chair, as recently as July 5, 2018,' and that 'Tennessee is capable of killing Mr. Zagorski in this electric chair.'" (Doc. No. 8 at 3 (quoting Complaint at 11, *Zagorski v. Haslam*, No. 3:18-1035 (M.D. Tenn. Oct. 10, 2018).)

The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions. *Northeast Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The court must assess four factors to determine whether a plaintiff is entitled to a preliminary injunction: "(1) whether [a movant] has demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay." *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

The potential harm arising from a court's ruling on a motion to enjoin an inmate's execution weighs heavily on both sides. The irreparable injury inflicted by an execution in violation of the Constitution is too obvious to require discussion. And "it is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001). But, on the other hand, courts must weigh the State's interest in carrying out a lawful death sentence and in the finality of criminal judgments, *Workman v. Bredesen*, 486 F.3d 896, 912–13 (6th Cir. 2007), and the fact that "the public interest is not served by ordering a stay of execution for claims that are unlikely to prevail." *Bedford v. Kasich*, No. 2:11-CV-351, 2011 WL 1691823, at *15 (S.D. Ohio May 4, 2011). That interest in finality grows weightier as an execution date approaches, and both the Supreme Court and the Sixth Circuit have counseled against last-minute stays that interfere with the state's ability to carry out its sentences:

> A stay is an equitable remedy, and equity must take into consideration the State's strong interest in proceeding with its judgment. There is a strong equitable

presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay. The last-minute nature of an application to stay execution bears on the propriety of granting relief.

*Bedford v. Bobby*, 645 F.3d 372, 375 (6th Cir. 2011) (internal marks and citations omitted) (vacating a stay of execution that had been granted by a district court); *see also Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004).

Because of the strong and universal competing interests surrounding an impending execution, these cases often turn on the inmate's ability to establish a likelihood of success on the merits of his challenge. *Glossip*, 135 S. Ct. at 2737 ("The parties agree that this case turns on whether petitioners are able to establish a likelihood of success on the merits."); *In re Ohio Execution Protocol Litig. (Campbell v. Kasich)*, 881 F.3d 447, 449 (6th Cir. 2018) (observing that "the 'likelihood of success on the merits' factor is determinative here"). To satisfy that prong, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). "More than a mere 'possibility' of relief is required." *Id.* The "absence of any meaningful chance of success on the merits" is sufficient basis for denial of a stay. *Workman*, 486 F.3d at 911. The level of likelihood of success required depends on the injury at stake:

> The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

*Griepentrog*, 945 F.2d at 153–54 (citations omitted).

In Counts I and II of his Complaint, the plaintiff challenged the constitutionality of

electrocution and of the statute that provided him with the choice between lethal injection and electrocution. The court has already dismissed those counts and finds that he has no likelihood of success on their merits.

Moreover, the court observes that the statute giving the plaintiff the option between lethal injection and electrocution has not been amended since 2014, TN LEGIS 1014 (2014), 2014 Tennessee Laws Pub. Ch. 1014 (S.B. 2580), and that the plaintiff's execution was scheduled for the month of October on March 15, 2018 (*see* Doc. No. 1 at 8). If the plaintiff found his statutory choice under Tennessee Code Annotated § 40-23-114(b) to be constitutionally objectionable, he could have filed suit about it long before October 26, 2018. Even if his objection to the choice only arose on July 5, 2018, when the state amended its lethal injection protocol to provide exclusively for the current three-drug procedure (Doc. No. 1 at 8),[3] there seems little excuse for his waiting more than three and one-half more months before filing suit. There is also nothing in the plaintiff's new allegations about Tennessee's electric chair (Doc. No. 9 at 22–32) that the plaintiff did not know at the time he filed his Complaint or at the time he made his election for electrocution or filed suit to enforce that election. *See* Complaint, *Zagorski v. Haslam*, No. 3:18-1035 (M.D. Tenn. Oct. 10, 2018). To seek a stay by raising arguments a few days before execution that could have been presented months ago demonstrates gamesmanship that the courts should not condone. *See Evans v. Bennett*, 440 U.S. 1301, 1484-85 (1979) ("To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession.") (Rehnquist, Circuit Justice). Neither Count I nor

---

[3] It seems unlikely that this change would have been the source of the plaintiff's objection, given that he and his fellow inmates also alleged that Tennessee's previous lethal injection protocol posed a substantial risk of serious harm and lingering death. *See West v. Schofield*, 519 S.W.3d 550, 551 (Tenn. 2017).

Count II, therefore, warrants a stay of execution in this case.

In their Statement Regarding Count III, the defendants assert that the plaintiff's access-to-courts claim is barred by both collateral estoppel and the statute of limitations. (Doc. No. 10 at 2–7. However, the court is not convinced that the Tennessee Supreme Court's holding that this issue was "pretermitted" constitutes a final adjudication on its merits. *Abdur'Rahman v. Parker*, No. M201801385SCRDOCV, 2018 WL 4858002 (Tenn. Oct. 8, 2018). Nor is it convinced that the limitations period for the plaintiff's claim is dictated by the effective date of Tennessee Code Annotated § 39-16-201, which only prevents bringing cellular phones into a penal institution "with unlawful intent," and says nothing of the use of the institution's own telephone lines. Tenn. Code Ann. § 39-16-201(b)(3).

Moreover, Commissioner Parker of the Tennessee Department of Correction has testified that he has no opposition to providing an attorney-witness with access to a telephone during the execution, but counsel for the department has testified that one reason the department will not allow the plaintiff's attorney to access a telephone during the execution is to prevent interruption of the execution by a court that was not fully informed of the circumstances. (Doc. No. 9-8 at 3–4; Doc. No. 9-7 at 3.) Accordingly, there are serious questions about whether there is a legitimate penological reason to prohibit the plaintiff's attorney-witness from having access to a telephone. As this court has previously held,

> [a] Plaintiff's right to access the courts to raise an Eighth Amendment claim of cruel and unusual punishment is decidedly not frivolous, and his interest in being free from cruel and unusual punishment is paramount. Plaintiff will be irreparably harmed if he is denied relief. The state certainly has no legitimate interest in depriving the Plaintiff of access to the courts to assert a claim of cruel and unusual treatment. Finally, the public interest is best served by insuring that executions are carried out in a constitutional manner.
>
> This court is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during

the execution itself. However, given society's (and the state's) interest in assuring that capital punishment is carried out in a humane manner and the minimal inconvenience to the state, this court finds the plaintiff's position well taken.

*Coe v. Bell*, 89 F. Supp. 2d 962, 966 (M.D. Tenn.), *vacated on other grounds*, 230 F.3d 1357 (6th Cir. 2000).

For these reasons, the court finds that Count III presents at least the minimum chance of success on the merits to warrant injunctive relief in light of the plaintiff's interest, the public interest, and the fact that the relief requested will not prevent the state from carrying out the plaintiff's sentence as scheduled. The plaintiff has acknowledged that "[a]n order directing Defendants to provide telephone access cures the constitutional violation and will not result in a stay." (Doc. No. 11 at 7.) Accordingly, the plaintiff's request for a temporary restraining order is **GRANTED in part**, to the extent that the defendants and anyone acting on their behalf are hereby **ENJOINED** from proceeding with the plaintiff's execution unless his attorney-witness is provided with immediate access to a telephone during the time preceding and during the execution. In all other respects, the plaintiff's pending motion is **DENIED**.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge